Counsel. Mr. Cieplo. Good morning. Good morning, Your Honors. You're on. Thank you. Philip Cieplo from Mr. Francisco Vasquez-Torres. Thank you very much for hearing the case. Judges, I believe what this comes down to is, as so many do, the fairness of the trial. Notwithstanding confession, which I think at least, at the very least, was almost like a wartime interrogation. Not only do you have the agents coming down, but you have two U.S. attorneys coming down from Arizona to Florida. You have a helicopter going above. And one of the U.S. attorneys, who is now, I guess, a U.S. attorney in Texas, says this is going to be the most important decision of your life. Well, if you look at the trial transcript, what basically convicted Mr. Vasquez-Torres, to some degree, had to be that confession or admission that was testified to. Was he given his Miranda warnings? Yes, he was. He was given his, and he wasn't in custody. He was at his place of business, right? Right. But, you know, the ironic thing, Your Honor, is when you're told this is going to be the most important decision in your life, it turned out to be. And it turned out to be the worst decision that he could ever make. Because what is the evidence at this trial without it? That Mario Gonzalez, who has a civil trial going on in Yuma, which he says he doesn't know about, and we'll get to that later, says that, yes, I called this man up. I talked to him several times. There are no records whatsoever in the record of any phone calls going from Mr. Gonzalez in Phoenix or Mexico, wherever it would be, to Florida. But there were calls from your client to known coyote, right? Right. There were ten – I think there were 12 calls from May 10th to May 24th. But whether or not it was actually – I would imagine – What was his name? Cerca. Cerca. Yeah. And then there was El Negro, who was the person who – Yeah. But here's the thing, Your Honor. Yeah, those phone calls are coming from Florida. But as you know, Joe Viveros, who had another trial and was convicted, there's no direct evidence whatsoever where those phone calls came from. And now it might – at the trial, Mr. Vazquez-Torres did say that he had spoken with Mr. Mario Gonzalez once, which in effect kind of hurts me a little because I'm saying there's no record of calls going from Phoenix to Florida. But the money was sent – the aliens. Right. Viveros sent the money. Viveros sent – Where did he get it? Well, if you look at the transcript, if you want to believe the worst against my client, he told him – So that's kind of what we're required to do. Right. And I understand that. He told him to send his own money, okay? But I'm going to get to the reason why maybe that confession isn't so great in a way. Well, when you say it's not so great, it's not suppressed, right? You're not saying it should be suppressed. You just don't much like it. Right. It certainly isn't fun. No. But here's the thing. If you recall, there was that Mr. Reeves, who was the trial attorney, subpoenaed the two attorneys from Yuma to come up, and Judge Carroll wouldn't give him the delay to make these guys come. One – apparently one Yuma attorney, after being subpoenaed by the Federal District Court, said, I'm not coming. And the other one said, well, I've got to be in San Diego for a district court matter. But here's the point. We're talking about the civil case now? Yeah. What's that got to do with this confession? Well, I'm moving on to outside of the confession. There's nothing to corroborate it. But the difficulty is, isn't the difficulty that we aren't the jury and we aren't the trial judge and we're just a little old appellate court? And it looks like there's plenty of evidence there. Well, no, Judge. I think in this particular case there wasn't plenty of evidence there. Notwithstanding that confession, there's really nothing, except Manzana, and if the trial counsel had been allowed to impeach him by bringing up these two attorneys, would have said, well, of course, we wouldn't have filed a civil lawsuit unless Mario knew that we were doing it. Mario's telling the court, I don't know about any civil lawsuit. There's nothing to go against that. Okay. So he's filed a lawsuit and he authorized it, and his testimony is inconsistent on that point. So? Well, it's more than inconsistent. It's a direct contradiction. Okay. Let's assume he's dead wrong. He intentionally lied about filing a civil lawsuit. So there was no reason to believe him about anything else. Then there was a stipulation that the lawsuit existed, right? Yeah, there was. And you were able to argue that to the jury, right? Yes, he was. Yes, he was. But it certainly – the judge kind of bullied him on that. Judge Carroll? Yeah. And as much as I love Judge Carroll, if you look at the excerpt of record, you know, Judge Carroll first of all thought this thing was happening in Pima County, and it wasn't. And he basically, you know, says – I think Mike Reeves says to the judge, well, you know, once these lawyers put this – file this lawsuit, they're basically saying that the facts are basically true because of Rule 11. And the judge says, not in my court, mister, or something like that. And so ultimately, yeah, there was a stipulation. If I could just get on to the other point that I think is important, and that's the not guilty of Count 2. If you look at the indictment, the superseding indictment of the Count 2, it basically says that Francisco and Joel Viveiros Flores aided and abetted – I'll leave a little out – that did knowingly and intentionally encourage and induce certain aliens – and that's the name of the aliens – to come, enter, reside, knowing or in reckless disregard. Now, couldn't a rational jury, having heard the evidence, conclude that because Mario initiated contact with your client, that that meant he couldn't have induced them? Isn't that sort of the distinguishing fact? That could be distinguishing, but I think in this particular case – Yeah. A rational jury, looking at that evidence, could have said, wait a minute, he didn't induce anybody. Mario called him, right? Right. So if we determined that a rational jury had a logical explanation for the acquittal on the inducement but conviction on the conspiracy, where does that leave us? Well, I think it can still draw us back to the Morales case because in Count 1, here's the wording. Conspire, of course. Okay. Bringing or attempting to bring to the United States for the purpose of commercial advantage of those people, knowing that said persons were aliens. So you can make a distinction, and I think the distinction is valid, but in common sense and effect, it's the same crime, I believe. Let me move on to sentencing, if I could. Sure. Thanks. You know, by the way, we long ago said that Morales really doesn't hold much water under the Supreme Court holdings. Does it hold any? Excuse me? Does it hold any? A little bit. No, not really. Okay. You need to look at a case called United States v. Hart, a brilliantly written opinion. Okay. You wrote it? At 963 Fed Second 1278. I will. Let's see. Okay. The problem is that Judge Carroll looked to organizer leader in terms of Vasquez's operation in Florida, right? Yes. Is there any evidence in the record that he looked to his leadership organization vis-a-vis the alien smuggling? I don't think so. I mean, Mr. Vasquez had never even been to Arizona. I think that's the testimony. I think it's unconcerning. But he did plenty of organizing over the phone and e-mail and the like. But my reading of the record is that Judge Carroll focused, when he was talking about what constituted organizing and leadership, he was looking at the harvesting operation in Florida, right? I think that's probably correct. And in order to upwardly adjust, Vasquez-Torres would have had to have been an organizer leader of five or more people in the alien smuggling, right? Yeah. I think you're correct. I mean, even the pre-sentence writer, and it's my experience that the pre-sentence writers usually find things to upward depart on. And in this particular case, she said he was a consumer. You know, he was, I guess, buying people, going to the jury's verdict, of course. And then I'm going to get a quick drink of water. This wasn't an upward departure, though, right? It was an adjustment. No, no, no. It was an adjustment. It was an adjustment. Okay. And so I would ask the Court to look at that and not give him the four points. Two points. In the record I have, when Mr. Reeves – there's two problems here. One is with Magistrate Judge Lawrence O. Anderson. Apparently when Mr. Vasquez came in, he speaks Spanish, he speaks English, and you fill out a form. It's a one-page form. Mr. Reeves told Judge Carroll that I asked him if he had any property in Arizona. So he wrote no. The practice is, and I do this all the time, you sit down with your client, you get called over, you get this one sheet, you say, do you have this, do you have that, do you have a car, do you have a wife, do you have kids, how much do you make? And you write it down, they sign it. And Mr. Reeves testified that he asked him if he had any property in Arizona. I guess the answer was no. As we know, he does have property in Florida, anywhere from $600,000 to $700,000, but mortgage to the Hilton. I understand that it may be going, but that's another issue. So I would say he's not obstructing justice there. The second one is his testimony is different than the agent who said that he made this confession. And I know that the Court has the power to make those decisions. I think in this particular case, the Court didn't. One of the things that I see happening all the time in the trials that I do down there is, let's say a defendant goes to trial and the defendant wins. Now, he just said, and he testified, he just said a lot of things different than the agent that I just cross-examined. Nothing happens to the agent. I think I know where you're going with that argument, and there aren't enough judges on this panel to afford the relief you seek. You've got about four minutes left. Right. I'll hold still. Thanks a lot. Thank you very much for your argument. Mr. Simon. Thank you, Your Honor. Tom Simon, appearing. I'm a district unit, United States attorney for the District of Arizona. Excuse me. With regard to the issues, I would direct my remarks to the issues that appear in the briefs unless the Court directs me otherwise. Why don't we do them in reverse order? Let's start with the sentencing adjustment. What evidence in the record is there that Vasquez-Torres had anything to do in terms of leadership or organization with the alien smuggling operation, as opposed to Vasquez harvesting? By the defendant's own admission, over a course of two years, he utilized this alien smuggling organization eight to ten times to bring in, and each and every time he brought in approximately 40 aliens to his place of business. And this, the defendant was confident. He's a consumer, right? Didn't the PSO have it right, didn't they? It's like calling an escort service. He'd call 1-800-COYOTE, and they'd ask him how many people he wanted, and he'd say, and they'd show up to pick citrus, right? I would offer the Court that he bridged the gap between his consumer and actually being part of his own organization in the sense that he used his organization on almost a quarterly basis to bring in, again, 40 aliens to his place of business to work. Judge Carroll noted in the record with regard to the 80 aliens that were working during the course of the time. You know, there are restaurants that I buy food at a lot, and I would be really amazed to hear that I was a leader or organizer of that restaurant. It would just shock me. I go in there, and I buy their food. This guy goes and buys aliens from these people. And I can understand that he might be a bad man, but how does he become a leader of the smuggling organization any more than I would say become a leader of McDonald's? And the only thing that I would offer to the Court is just the only thing that I would offer to the Court between a user-consumer and someone who uses this organization and almost becomes part of his own organization and supplying him on a regular basis with these aliens, and again, almost on a quarterly basis, by his own admission, bringing these aliens in. And I would submit that each of these aliens, in a sense, becomes a participant in the organization because they are involved in this illegality. The provision provides that the participant can both be an indicted or unindicted co-conspirator. These people are, in a sense, working for the defendant. They know they're there illegally. They've actually joined this overall organization to be part of the defendant and working here illegally in the United States. But wasn't there evidence even from the government that this coyote organization, this particular organization, is a big smuggling operation? It is, Your Honor. It's not just a few little old guys who happen to serve Mr. Watson's toilets. I would agree with the Court in that regard, yes. Okay. Is it close enough to say, I'm choosing your words, almost becomes part of the organization? Is that enough? Don't you have to be the organization? Those are your words. Right. Well, I think it's part of the criminal activity. Well, the secondary question is, assuming that that's true, did the findings sustain that? It looks to me as though Judge Carroll is just talking about his own operation. I mean, he says he talks about the people in the field, the number of foremen. He's not talking about, at least in his findings, oral findings, he's not talking about supervising others in the alien smuggling. And I would agree with the Court. He does not articulate that for the record, Your Honor. Let me ask you a second sentencing question, and that's on the enhancement for perjury. I think my reading of the record is there may be enough to show willfulness, but I don't see any findings on materiality. Don't we have to send that back down? Dr. Jimenez and Ms. Progeny. I think the trial court had the opportunity to listen to the defendant testify during the course of trial, and his testimony was in direct contradiction to what the government agents had provided during the course of their testimony. And the testimony was certainly material in the sense the defendant attempted to, in essence, mitigate his involvement in this matter and attempted to convince the jury that he was not guilty based on the provisions of what the immigration officers had provided as opposed to what the defendant was offering. And I would submit that that certainly would be material with regard to that. You know, it probably is material. I mean, just if you put me in the trial judge's seat, I'd probably say, yeah, that looks pretty material to me. The difficulty with Dunnegan, which was trying to answer the question is every time somebody takes the stand, he's going to find himself charged with perjury when he loses. And Dunnegan says, well, you know, trial judges don't have to do much, but they've got to say that it was material. And the judge did not say material, and I would agree with the Court. Isn't that sort of a problem? Pardon me? Isn't that kind of a problem? We appreciate your candor. You want to address the confession point? It's well covered in the briefs. Are any of the other points? If the Court has further questions with regard to those matters. Otherwise, if they're not. I don't see any. Let's hear a rebuttal argument, Mr. Cisipo. You've got about four minutes, I think. Thank you, counsel. Thank you very much, counsel. The one thing I neglected to talk about on sentencing is that I think if it does get remanded, Mr. Vasquez-Torres should have at least an opportunity to argue to Judge Carroll that he's a minimal participant, maybe not a minor. The one that's the two points, not the four points. My guess is, off the top of my head, if it goes back, you both have an opportunity on each of these points. Okay. And maybe more. Who knows? Okay. That's the risk. Well, then I don't have anything further. I thank you very much. Thank you, Mr. Cisipo. Thank both counsel. A very well argued case. We appreciate it. Thank you. You can head back to Phoenix. I understand it's going to hit 90 today. Next case on the case.
judges: Fernandez, Hawkins, Thomas